**READING COMPANY, Appellant,**

v.

**DREDGE DELAWARE VALLEY, her engines, boilers, tackle, machinery, etc., and all persons having any interest therein, and American Dredging Company.**

**AMERICAN DREDGING COMPANY, Cross-Libelant,**

v.

**READING COMPANY, Cross-Respondent.**

**No. 71–1853.**

United States Court of Appeals, Third Circuit.

Argued Sept. 12, 1972.

Decided Oct. 25, 1972.

2. The Los Angeles Times, March 20, 1972.

**1162**

Harrison G. Kildare, Rawle & Henderson, Philadelphia, Pa., for appellant.

Raymond T. Letulle, Krusen, Evans & Byrne, Philadelphia, Pa., for appellees.

Before BIGGS, ADAMS and JAMES ROSEN, Circuit Judges.

## OPINION OF THE COURT

PER CURIAM:

Reading Company appeals from a non-jury verdict in favor of defendant American Dredging Company. The trial, by agreement of the parties and consent of the trial judge, was limited to issues of liability. By stipulation of counsel final judgment was entered on American's counterclaim against Reading in the amount of $12,633.39 plus taxable costs.

Reading filed a libel in rem and in personam against Dredge Delaware Valley and American for an alleged negligent breach of contract. Reading owned and controlled Pier 14 Port Richmond, Philadelphia, Pennsylvania located in the navigable waters on the west bank of the Delaware River. Dredge Delaware Valley is a dragline harbor dredge owned and operated by American. Reading alleges that on May 9, 1963 Dredge Delaware Valley operated by employees of American disregarded specifications and limits for certain dredging operations for deepening the river bottom in the vicinity of the pier and negligently caused the down river portion of the outer face of the structure where the dredge was working to fall into the river. The initial dredging, which commenced on or about April 6, 1963 was performed in accordance with oral instructions and pursuant to a general contract covering locations unrelated to Pier 14.[1] The chart for this dredging operation was given to the dredge captain by Alex Brunner, Reading's dredging inspector. American claimed that Brunner had apparent authority to direct dredging operations and to change dredging limits.

On June 4, 1963, over a month after collapse of the pier, Reading delivered a written change order to American specifying the work done at Pier 14.[2] The change order was conditionally accepted by American.[3]

---

1. p. 172a.

2. p. 145a (Exhibit P-2)

3. The change order contained two conditions:

   "1. The Change Order specifies the original instructions given American Dredging Company as of April 9, 1963.

> We [American] contend that these instructions were subsequently changed and that we were instructed to dredge across the face of the river end of the pier; this contention is denied by Reading Company. Our execution and delivery of the Change Order is without prejudice to these respective contentions,

The central issue at trial was whether Alex Brunner had apparent authority to change dredging limits established by Reading's engineering department.

Judge Luongo found that "The facts are really overwhelming. They indicate clearly that Alex Brunner had apparent authority to change the dredging limits by ordering American personnel to dredge the outer face of Pier 14; and that American was justified in relying on these orders."[4] He also concluded that "Alex Brunner had apparent authority to change the dredging limits established by Reading's Engineering Department;" and that American was under "no duty to inquire further into the authority of Alex Brunner to change dredging limits."[5]

Continental-Wirt Electron. Corp. v. Sprague Electric Co., 329 F.Supp. 959, 963 (E.D.Pa.1971) discusses "authority" in this fashion:

"An admitted agent is presumed to be acting within the scope of his authority where his act is legal and there is no evidence as to any limitations of his authority. In the absence of notice to the contrary, a third person dealing with a known agent may properly assume that he is acting within the scope of his authority. His authority is presumed to be co-extensive with the business entrusted to him and to embrace whatever is necessary or usual in the ordinary course of such business: 3 C.J.S. Agency § 317, p. 256.

Apparent authority is the power to bind the principal where the principal has not actually granted authority but which he leads persons with whom his agent deals to believe that he has granted. Persons with whom the agent deals can reasonably believe that the agent has power to bind his principal if the principal knowingly permits the agent to exercise such power: Revere Press, Inc. v. Blumberg, 431 Pa. 370, 375, 246 A.2d 407 (1968)."

We agree with the trial court's application of the concept of apparent authority to the evidence in this case:

"Section 27 of the Restatement of Agency, 2d, defines apparent authority as follows:

'[A]pparent authority to do an act is created as to a third person by written or spoken words or any other conduct of the principal which, reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him.'

It is sufficient to create apparent authority if the principal should realize that his conduct is likely to create a belief that the agent is authorized to act for him. Restatement of Agency, 2d, § 27, Comment a, p. 104. See Revere Press, Inc. v. Blumberg, et al., 431 Pa. 370, 246 A.2d 407 (1968). Once apparent authority has been created, it does not terminate until the third person has reason to know that the principal has revoked the authority, or that the agent has renounced it, or that such time has elapsed or such events have happened after the authorization as to require the reasonable inference that the agent's authority has terminated. Restatement of Agency, 2d, § 125, Comment b."[6]

---

which will have to be determined on their own merits at some subsequent time.

2. Reading Company will promptly pay American Dredging Company the sum of $161,102.95 being 95% of the bills rendered for services. Payment of this amount by Reading Company will be without prejudice to your claim against American Dredging Company for asserted damages to the end section of the pier, and acceptance of that amount will be without prejudice to the contention of American Dredging Company that it is not liable for the pier damage and is entitled to be paid the balance of the bill as rendered." p. 148a (Exhibit P-4)

4. p. 179a.

5. p. 180a.

6. p. 178a.

Reading's contention that American failed to sustain its burden of proving apparent authority by a preponderance of the evidence must be considered in light of Rule 52(a) of the Federal Rules of Civil Procedure which provides that "findings of fact shall not be set aside unless clearly erroneous \* \* \*."

In the recent case of Krasnov v. Dinan, 465 F.2d 1298, 1972, Judge Aldisert clearly defined the limited scope of appellate review in non-jury cases:

"In reviewing the decision of the District Court, our responsibility is not to substitute findings we could have made had we been the fact-finding tribunal; our sole function is to review the record to determine whether the findings of the District Court were clearly erroneous, i. e., whether we are 'left with a definite and firm conviction that a mistake has been committed.'" Speyer, Inc. v. Humble Oil and Refining Co., 403 F.2d 766, 770 (3d Cir. 1968). It is the responsibility of an appellate court to accept the ultimate factual determination of the fact-finder unless that determination either (1) is completely devoid of minimum evidentiary support displaying some hue of credibility, or (2) bears no rational relationship to the supportive evidentiary data. Unless the reviewing court establishes the existence of either of these factors, it may not alter the facts found by the trial court. To hold otherwise would be to permit a substitution by the reviewing court of its finding for that of the trial court, and there is no existing authority for this in the federal judicial system, either by American common law tradition or by rule and statute."

We have carefully reviewed the record and are satisfied that the findings of fact made by Judge Luongo are supported by substantial evidence. Reading's appeal is without substance.

The judgment will be affirmed.